[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 30, 2005
THOMAS K. KAHN
CLERK

No. 05-12160
Non-Argument Calendar

_____

D. C. Docket No. 04-00551-CR-T-27-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEJANDRO RAMOS BERTEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 30, 2005)

Before BIRCH, BLACK  and BARKETT, Circuit Judges.

PER CURIAM:

Alejandro Ramos Bertel appeals his 188-month sentence after pleading

guilty to conspiring to possess and possessing with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. §§ 1903(a), (g), and (j), and 21 U.S.C. § 960(b)(1)(B)(ii). The district court denied him a mitigating-role adjustment pursuant to U.S.S.G. § 3B1.2. We AFFIRM.

## I. BACKGROUND

In November 2004, the helicopter crew from the Royal Dutch Naval vessel Willem Van Der Zaan observed a go-fast boat stopped in the southwest Carribean Sea. Upon sighting the helicopter, the go-fast boat attempted to evade it. During pursuit by the helicopter, the crew of the go-fast boat threw bales of cocaine into the sea and subsequently stopped the boat. A United States Coast Guard Law Enforcement Detachment ("Coast Guard") assigned to the Willem Van Der Zaan for a counter-narcotics patrol intercepted and boarded the go-fast boat to determine its nationality. Although the crew claimed Colombian citizenship, the go-fast boat flew no flag and had no registry. Coast Guard personnel contacted Colombian authorities, who informed that the go-fast boat, which contained approximately 600 pounds of fuel, was without nationality.

The Dutch vessel's crew recovered 58 bales of cocaine, weighing 1,450 kilograms, from the go-fast boat's course, while the Coast Guard removed Bertel

2

and the others from the go-fast boat for transport to a United States naval vessel. During post-<u>Miranda</u> statements, authorities learned that the four crew members had been recruited to take the bales of cocaine to a location in the Caribbean Sea and that one of the men was the captain of the go-fast boat.

Pursuant to U.S.S.G. § 3D1.2(d), the probation officer grouped counts one and two of the indictment together based on the drug quantity involved. Based on the 1,450 kilograms of cocaine for which Bertel was held accountable, the probation officer assigned a base offense level of 38, pursuant to § 2D1.1(c)(1), which corresponds to quantities of 150 kilograms or more of cocaine. Because Bertel had a prior criminal history, the probation officer found that he did not qualify for a § 5C1.2 safety-valve reduction. No adjustment was given for Bertel's role in the offense. A two-point reduction was made for acceptance of responsibility, pursuant to § 3E1.1(a), and another one-point reduction was made because Bertel provided timely notification to the government of his intent to plead guilty, resulting in a total offense level of 35. Bertel had three criminal history points for a prior conviction for possession with intent to distribute less than 700 kilograms of marijuana, resulting from his previous apprehension from a vessel south of Puerto Rico. He was assigned a criminal history category of II, resulting in a Sentencing Guidelines imprisonment range of 188-235 months.

After preparation of the Presentence Investigation Report ("PSI"), Bertel objected to the lack of a downward adjustment for his role in the offense and contended that he was only a minor participant in the overall conspiracy. The probation officer determined that Bertel was not entitled to a role adjustment because his role as a crew member was comparable to others in the conspiracy, and there was not sufficient verifiable information to show that he qualified for a downward adjustment.

At the sentencing hearing, Bertel's counsel reiterated his argument that Bertel should receive a minor-role adjustment. He noted that Bertel was only a crewman, and not an owner of the drugs or organizer of the conspiracy, but rather "simply a set of hands" facilitating the transport of the drugs. R3 at 3-4. He also noted that a minimal-role adjustment may be warranted based on the same argument. Id. at 4-5. Bertel made no objections to the facts contained in the PSI. The government noted that the captain of the boat was given a sentencing enhancement because of his special skill as a driver and a captain, but argued that the three others were "essentially equally culpable." Id. at 6.

The district judge overruled Bertel's objection and denied his request for a downward adjustment. Based on the relevant conduct for which Bertel was held accountable, the judge determined that nothing in the record indicated that "he

4

[wa]s less culpable than most of the other participants," and his culpability did not diminish just because his role may not have been as important as the others because his role as a crewman was significant in the successful operation of the conspiracy.  Id. at 8-9.  Bertel was sentenced at the low end of the Sentencing Guidelines range to 188 months of imprisonment.[1]

## II. DISCUSSION

On appeal, Bertel argues that the district court erred in failing to give him a mitigating-role adjustment because no evidence showed that he owned, sold or distributed the drugs in exchange for money, and, therefore, his role is less than that of the larger organization behind the conspiracy.   He also argues that the district court did not give any consideration to his mitigating role at sentencing. He contends that his role was less than that of all of the major transporters and owners of the drugs and that he was simply a crewman.

A sentencing court's determination of a defendant's role in an offense constitutes a factual finding that we review for clear error.  United States v.

---

[1]Bertel was sentenced on 11 April 2005, and his counsel argued that, since the range of 188-235 months was no longer binding on the district court, the court should consider the range as well as other factors listed in 18 U.S.C. § 3553(a) in imposing a reasonable sentence.  R3 at 10-13.  See United States v. Booker, 543 U.S. ___, ___, 125 S.Ct. 738, 764 (2005).  The district court considered the § 3553(a) factors when it sentenced Bertel to 188 months of imprisonment. R3 at 19-20.  Since Bertel does not argue reasonableness on appeal, it is abandoned.  See United States v. Jernigan, 341 F.3d 1273, 1282 n.8 (11th Cir. 2003) (noting that a claim that is not plainly and prominently indicated is abandoned on appeal, even if properly preserved below).

De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).  The proponent of the

downward adjustment always bears the burden of proving the mitigating role in the

offense by a preponderance of the evidence.[2]  Id. at 939.

The Sentencing Guidelines permit a court to decrease a defendant's offense

level by four levels if it finds that the defendant was a "minimal participant" or two

levels if it finds that the defendant was a "minor participant" in the criminal

activity.  U.S.S.G.  § 3B1.2.  A minimal participant is one who is "plainly among

the least culpable of those involved in the conduct of a group,"  U.S.S.G. § 3B1.2,

comment. (n. 4), while a minor participant is one "who is less culpable than most

other participants, but whose role could not be described as minimal," U.S.S.G.

§ 3B1.2, comment. (n. 5).

The adjustment applies if the defendant proves by preponderance of the

evidence that he "play[ed] a part in committing the offense that makes him

substantially less culpable than the average participant."  U.S.S.G. § 3B1.2,

comment. (n. 3(A)); United States v. Everett, 129 F.3d 1222, 1224 (11th Cir. 1997)

(per curiam).  The determination of whether to apply a role reduction is a heavily

---

[2] Pre-Booker standards are used to review a Sentencing Guidelines calculation.  United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (pre-Booker sentence).  Even though the Sentencing Guidelines are advisory after Booker, the trial court must continue to consider them when sentencing and must calculate the sentence under the Guidelines correctly.  Id. at 1178-79.

fact-based inquiry and a sentencing court, "in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." U.S.S.G. § 3B1.2, comment. (n.3(C)).

In determining whether a mitigating role adjustment is warranted, a district court first must evaluate the defendant's role in the relevant conduct for which he has been held accountable at sentencing. De Varon, 175 F.3d at 940. In looking at relevant conduct, "the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." Id. at 941. "Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable – not a minor role in any larger criminal conspiracy – should the district court grant a downward adjustment for minor role in the offense." Id. at 944. Although a defendant's status as a drug courier alone does not establish whether or not he is a minor participant, "when a drug courier's relevant conduct is limited to [his] own act of importation [or transportation], a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43. Furthermore, in the drug-courier context, "the amount of drugs imported is a material consideration in

7

assessing a defendant's role in [his] relevant conduct" and, in some cases, could be dispositive. Id. at 943.

The district court may also evaluate a defendant's role by comparing it to that of other participants in his relevant conduct. Id. at 940. When measuring a defendant's conduct against other participants' conduct, a district court may consider only those participants who are identifiable by the evidence and who were involved in the relevant conduct for which the defendant was convicted. Id. at 944. "The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of [his] role in the offense, since it is possible that none are minor or minimal participants." Id. "[T]he district court must determine that the defendant was less culpable than most other participants in [his] relevant conduct." Id.; see also U.S.S.G. § 3B1.2, comment. (n. 3(A)) ("This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant.").

The district court did not clearly err in refusing to grant Bertel a mitigating-role adjustment. First, Bertel is held accountable for a large amount of drugs, and this alone could preclude him from receiving a mitigating-role adjustment. De Varon, 175 F.3d at 943. Furthermore, where Bertel's relevant conduct was

possessing with intent to distribute 1,450 kilograms of cocaine, he must establish that he was a minor participant with respect to that relevant conduct, rather than noting that there was a broader criminal conspiracy. See id. at 944. Finally, Bertel's relevant conduct is identical to his actual conduct. In the drug transport context, the district court is allowed to conclude, as it did here, that he played an important or essential role in the transportation of those drugs. See id. at 942-43; R3 at 9.

The second prong of De Varon further precludes a mitigating-role adjustment. To the extent that Bertel is arguing that his role should be compared to others in a larger conspiracy, his argument is meritless because these others are not discernible from the evidence and are not part of the relevant conduct for which Bertel was convicted. De Varon, 175 F.3d at 944. With respect to the other participants in the relevant conduct, they were all part of the same conspiracy and all held accountable for the same amount of drugs. There is nothing in the facts, to which Bertel did not object, to indicate that Bertel was substantially less culpable than most of his fellow crewmen. Furthermore, as the district court noted, his role as a crewman was significant in the successful operation of the conspiracy. Though Bertel's role may be less than that of the captain's, who was given an enhancement, this does not automatically entitle him to a mitigating-role

adjustment since it is possible that none of the participants are minor or minimal, as the district court concluded. Id.

Bertel's argument that he was not the owner of the drugs was not supported by the evidence. Because a defendant's role in an offense is a fact-intensive inquiry, the district court was not required to grant Bertel a mitigating-role adjustment based on his bare assertion. U.S.S.G. § 3B1.2, comment. (n.3(C)). Since he did not call witnesses or otherwise testify in support of his assertion, Bertel did not meet his burden of showing by a preponderance of the evidence that his relevant conduct made him substantially less culpable than his codefendants. The district judge considered the mitigating role adjustment and adequately explained an acceptable reason for not granting the adjustment.

### III. CONCLUSION

Bertel has appealed the district judge's denying him a mitigating-role adjustment under U.S.S.G. § 3B1.2 in his sentence following his pleading guilty to conspiring to possess and possessing with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to United States jurisdiction, in violation of 46 U.S.C. § 1903(a), (g), and (j), and 21 U.S.C. § 960(b)(1)(B)(ii). As we have explained, the district judge appropriately denied Bertel a mitigating-role adjustment. Accordingly, his sentence is **AFFIRMED.**